PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Patrick E. Fitzmaurice

*Attorneys for Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : |
| | : |
| IIG Global Trade Finance Fund Ltd. (in Official Liquidation), *et al.*, | : Case No. 20-10132 (MEW) |
| | : Chapter 15 |
| | : Jointly Administered |
| Debtors. | : |
| | : |
| _____ | : |
| | : |
| IIG Global Trade Finance Fund Limited (in Official Liquidation) and IIG Structured Trade Finance Fund Ltd. (in Official Liquidation, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : Adv. Pro. No. 26-_____ (MEW) |
| Oscar Alberto Ordoñez Muñoz, Luz Angela Beltran Ordoñez, Heaven Investments Limited, Drinian Port Inc., Pretium Investments L.P., Consorcio Minero del Cesar S.A.S., Spring Assets Ltd., Chianto S.A., Axia Power I, S.A., Bliwise International, SA, Waterstone Closings, Inc. d/b/a closings.com, German Osorio Jaramillo, Gloria Jacqueline Diaz Reyes, OSDI, LLC, and Blue Canal LLC, | : Complaint |
| | : |
| Defendants. | : |
| | : |
| _____ | : |

Plaintiffs IIG Global Trade Finance Fund Ltd. (in Official Liquidation) ("**GTFF**") and IIG Structured Trade Finance Fund Ltd. (in Official Liquidation) ("**STFF**," and together with GTFF, the "**Debtors**" or  "**Plaintiffs**") by Christopher Kennedy and Alexander Lawson, the duly appointed joint official liquidators (the "**JOLs**") and recognized foreign representatives, as and for their complaint against defendants Oscar Alberto Ordoñez Muñoz ( "**Oscar Ordoñez**" or "**Mr. Ordoñez**"), Luz Angela Beltran Ordoñez ("**Luz Ordoñez**"), Heaven Investments Limited ("**Heaven Investments**") , Drinian Port Inc. ("**Drinian Port**"), Pretium Investment L.P. ("**Pretium**"), Consorcio Minero del Cesar S.A.S. ("**Consorcio Minero**"), Spring Assets Ltd. ("**Spring Assets**"), Chianto S.A. ("**Chianto**"), Axia Power I, S.A. ("**Axia Power**"), Bliwise International SA, ("**Bliwise Int'l**"), Waterstone Closings, Inc. d/b/a closings.com ("**Waterstone**"), German Osorio Jaramillo ("**German Osorio**"), Gloria Jacqueline Diaz Reyes ("**Jackie Diaz**") and OSDI, LLC ("**OSDI**"), and Blue Canal LLC ("**Blue Canal**," and collectively, the "**Defendants**"), allege as follows:

## I.    INTRODUCTION

1.    On April 27, 2023, this Court entered judgment in the Debtors' favor against San Agustin Energy Corp. ("**San Agustin**") in the amount of $24,018,608.38 (the "**Judgment**"). As a result of the bad faith actions by defendant Oscar Ordoñez, and companies under his control, including the corporate defendants here, and the other defendants as of this filing, the Judgment, plus post-judgment interest as provided by law, remains unsatisfied.

2.    Oscar Ordoñez used San Agustin as his personal piggy bank, converting its assets – including proceeds of the loans that underlie the Judgment – for his own benefit and for the benefit of himself and his family's investments. Mr. Ordoñez commingled assets, ignored corporate separateness and generally operated San Agustin and the corporate defendants here

2

without regard to the interests of external creditors to enrich himself at those creditors' expense. In but one example of the extent of his greed, Mr. Ordoñez caused San Agustin to make over $100 million in fraudulent transfers to affiliates under his control or third parties for his own benefit, including more than $28,000,000 (and likely more) in fraudulent transfers after Plaintiffs initiated efforts to recover on the Loans; incredibly, a minimum of $17,300,000 of these fraudulent transfers from San Agustin were made during the pendency of Plaintiffs' adversary proceeding against San Agustin.

3.      The funds diverted from San Agustin (and that of its predecessor in interest Valle Energy Inc. ("**Valle**") were used to acquire Florida real estate, invested in a securities portfolio of stocks, bonds and alternative investment vehicles and to otherwise make payments to or on behalf of members of the Ordoñez family. Simply put, Mr. Ordoñez established a practice of looting the Valle/San Agustin businesses, which ultimately rendered San Agustin unable to satisfy the Judgment owed to Plaintiffs. This action seeks to remedy those wrongs.[1]

## II.      JURISDICTION AND VENUE

4.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper in this district pursuant to 28 U.S.C. §1410(a)(1).

5.      This Court has jurisdiction over each of the Defendants because: (a) German Osorio and Jackie Diaz are U.S. citizens and residents of Florida, (b) OSDI, Waterstone and Blue Canal are companies organized and existing under Florida law, (c) Mr. Ordoñez and Luz Ordoñez are, upon information and belief, beneficial owners of U.S. property, persons that have opened U.S. bank accounts and have had significant investments in the United States through the family-owned, corporate Defendants. Mr. and Mrs. Ordoñez have used the U.S. banking system for their U.S.

---

[1] A partial list of the intercompany transfers, certain of which Plaintiffs seek to recover as fraudulent, is attached as Schedule 1.

dollar denominated business and/or are the recipients of fraudulent transfers originating from U.S. bank accounts as more fully discussed below. Mr. Ordoñez also personally guaranteed loans to certain of the entity defendants, which loans are governed by New York law.

6.      This is a core proceeding under 28 U.S.C. § 157(b)(2) and the Court may enter a final order or judgment in this matter.

7.      Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiffs consent to the entry of final orders or judgment in this matter by this Court.

## III.    THE PARTIES

8.      The Debtors are exempted limited companies incorporated under the laws of the Cayman Islands that are in official liquidation before the Grand Court of the Cayman Islands (the "**Grand Court**"). The JOLs were appointed by the Grand Court to oversee the Debtors' liquidation proceedings and are the recognized foreign representatives in the Debtors' Chapter 15 cases pending in this Court.

9.      Defendant Oscar Ordoñez is, upon information and belief, a citizen of Panama and Colombia and a resident of Barranquilla, Colombia. Mr. Ordoñez is the ultimate beneficial owner of each of the Ordoñez Instrumentalities,[2] is the person for whose benefit the fraudulent transfers described herein were made and was personally a subsequent transferee of certain of those transfers. Mr. Ordoñez was the sole person authorized to operate all personal and corporate bank accounts opened and maintained by U.S. banks located in New York through which many of the fraudulent transfers discussed herein flowed. A list of fraudulent transfers made to or for the benefit of Mr. Ordoñez is attached as Schedule 2 and incorporated herein by reference.

---

[2]  The "**Ordoñez Instrumentalities**" are collectively, the entity Defendants that Mr. Ordoñez beneficially owns, *i.e.*, Heaven Investments, Drinian Port, Spring Assets, Chianto, Axia Power Pretium and Consorcio Minero.

10.     Defendant Luz Ordoñez, is, upon information and belief, a citizen of Panama and Colombia and a resident of Barranquilla, Colombia. Luz Ordoñez is Mr. Ordoñez's spouse, and is a joint owner of the brokerage account that received millions of dollars from the Valle/San Agustin business for no consideration.

11.     Defendant Heaven Investments is, upon information and belief, a company organized under the laws of the Bahamas with its registered agent and office located at Icaza, Gonzalez-Ruiz & Aleman (Bahamas) Trust Limited, Pineapple House, # 2 Old Fort Bay, P. O. Box SP-62883 Nassau, Bahamas. Heaven Investments operates as an investment vehicle controlled by and for the benefit of Mr. Ordoñez. Heaven Investments opened and maintained numerous bank and brokerage accounts in New York, which accounts received more than $20 million in fraudulent transfers as described herein. Those fraudulent transfers included funds that were derived from the proceeds of the Loan (as defined below). A list of fraudulent transfers made to Heaven Investments is attached as Schedule 3 and incorporated herein by reference.

12.     Defendant Drinian Port is, upon information and belief, a company incorporated and operating as a BVI Business Company under the laws of the British Virgin Islands with its registered agent and office located at Icaza, Gonzalez-Ruiz & Aleman (BVI) Trust Limited, Vanterpool Plaza, Wickham's Cay 1, P.O. Box 873, Road Town, Tortola VG1110, British Virgin Islands. Upon information and belief, the sole shareholder of Drinian Port is non-party Heaven Energy Ltd., which Mr. Ordoñez controls through a nominee director and nominee shareholder. Drinian Port operated as Mr. Ordoñez's real estate investment company, and it received millions of dollars in fraudulent transfers that originated from non-party Valle. Included among these fraudulent transfers were transfers of the proceeds of the Loan, which transfers were made into its New York accounts at Pershing LLC, an affiliate of Bank of New York Mellon. A list of fraudulent

transfers made to or for the benefit of Drinian Port is attached as <u>Schedule 4</u> and incorporated herein by reference.

13.    Defendant Spring Assets is, upon information and belief, a company organized under the laws of the Bahamas, with its registered agent and office located at Icaza, Gonzalez-Ruiz & Aleman (Bahamas) Trust Limited, Pineapple House, # 2 Old Fort Bay, P. O. Box SP-62883, Nassau, Bahamas. Upon information and belief, Drinian Port is the owner of Spring Assets. Spring Assets received more than $24 million in fraudulent transfers from San Agustin's New York bank accounts, certain of which funds were then transferred to defendants OSDI or German Osorio to fund real estate investments. A list of fraudulent transfers made to Spring Assets is attached as <u>Schedule 5</u> and incorporated herein by reference.

14.    Defendant Chianto is, upon information and belief, a company organized under the laws of Panama, with its registered agent and office located at Icaza, Gonzalez-Ruiz & Aleman Panamá, Calle Aquilino de la Guardia No. 8 Edificio IGRA P.O. Box 0823-02435 Panamá City, República de Panamá. Upon information and belief, Spring Assets is the sole shareholder of Chianto. Chianto received millions of dollars in fraudulent transfers that originated with San Agustin into Chianto's New York bank accounts at JPMorgan Chase. Bank statements for certain of Chianto's accounts were delivered to the Fort Lauderdale Property (as defined below). A list of fraudulent transfers made to Spring Assets is attached as <u>Schedule 6</u> and incorporated herein by reference.

15.    Defendant Consorcio Minero is, upon information and belief, a company organized under the laws of Colombia with its principal office located at Carrera 53 76 239 of 304, Barranquilla, Atlantico, Colombia. Upon information and belief, Mr. Ordoñez is a principal and main shareholder of Consorcio Minero. Consorcio Minero received a fraudulent transfer of more

than $7 million from San Agustin into its New York bank account at JPMorgan Chase. The Consorcio Minero transfer is included in <u>Schedule 1</u>, which is incorporated herein by reference.

16.     Defendant Axia Power is, upon information and belief, a company organized under the laws of Panama with its principal office located at Icaza, Gonzalez-Ruiz & Aleman Panamá, Calle Aquilino de la Guardia No. 8 Edificio IGRA P.O. Box 0823-02435 Panamá City, República de Panamá. Upon information and belief, Mr. Ordoñez is the beneficial owner of Axia Power. Axia Power directly or indirectly received millions of dollars in fraudulent transfers that originated with Valle, San Agustin or one of the other Defendants herein, into its New York bank account at JPMorgan Chase. A list of fraudulent transfers made to Axia Power is attached as <u>Schedule 7</u> and incorporated herein by reference.

17.     Defendant Pretium is, upon information and belief, a Canadian limited partnership beneficially owned by Mr. Ordoñez. Pretium is the successor to Drinian Port in serving as Mr. Ordoñez' personal real estate investment vehicle and Drinian Port's investments were assigned to Pretium. Pretium also received millions of dollars in fraudulent transfers made by other of the Defendants herein into its New York bank accounts at JPMorgan Chase. A list of fraudulent transfers made to Pretium is attached as <u>Schedule 8</u> and incorporated herein by reference.

18.     Defendant German Osorio is, upon information and belief, a United States citizen and a resident of Florida. German Osorio purported to work for the International Investment Group, LLC ("**IIG**") in originating the Loan. In reality, German Osorio has had a business relationship with Mr. Ordoñez for decades and acted as his nominee for various investments, including real estate investments that were, upon information and belief, funded with fraudulent transfers from San Agustin. A list of fraudulent transfers made to or for the benefit of Defendants: German Osorio, Jackie Diaz and OSDI is attached as <u>Schedule 9</u> and incorporated herein by reference.

19.    Defendant Jackie Diaz is the wife of German Osorio and, upon information and belief, a United States citizen and a resident of Florida.

20.    Defendant OSDI is a Florida limited liability company jointly owned by German Osorio and Jackie Diaz, with its registered address located at 16500 Collins Avenue, Apt. 656, Sunny Isles, Florida 33160. OSDI received more than $2 million from funds that originated with San Agustin. OSDI used those funds to invest in real estate throughout the United States.

21.    Defendant Bliwise Int'l is, upon information and belief, a company organized under the laws of Panama with its principal office located at 53rd Street East, Panama, Panama. Upon information and belief, Bliwise Int'l is beneficially owned and controlled by German Osorio.[3] Bliwise Int'l received more than $1 million in fraudulent transfers from San Agustin and transferred those funds to OSDI to fund real estate investments for the benefit of Mr. Ordoñez. A list of fraudulent transfers made to Bliwise Int'l is attached as Schedule 10 and incorporated herein by reference.

22.    Defendant Waterstone is a Florida corporation with its registered address located at 1124 Kane Concourse, Bay Harbor Island, Florida, 33154. Waterstone received at least $833,000 in fraudulent transfers that originated with San Agustin for which San Agustin received no consideration. Waterstone was also the closing agent on a number of real estate transactions involving persons or entities associated with Mr. Ordoñez, including OSDI and German Osorio. These transactions, upon information and belief, were funded directly or indirectly by fraudulent transfers originating from San Agustin or other Defendants. A list of transfers involving U.S. real

---

[3] Plaintiffs believe German Osorio owns Bliwise Int'l because many transfers received by Bliwise Int'l from Valle or San Agustin were then transferred to OSDI. In addition, German Osorio was the managing member of a dissolved Florida entity, Bliwise USA LLC. Jackie Diaz was also a registered agent for this entity.

estate that, upon information and belief, Mr. Ordoñez has an ownership interest through nominees and proxy companies is attached as <u>Schedule 11</u> and incorporated herein by reference.

23.     Defendant Blue Canal is a Florida limited liability company with its registered address at 1510 SW 15th Ave, Fort Lauderdale, FL 33312 (the "**Fort Lauderdale Property**"). Upon information and belief, the acquisition of the Fort Lauderdale Property was partially funded by San Agustin.

24.     Non-party Sergio Ordoñez is, upon information and belief, a citizen of Panama and Colombia and a resident of Barranquilla, Colombia. Sergio Ordoñez is the son of Oscar and Luz Ordoñez, and is an authorized signatory for defendant Heaven Investments' New York bank accounts at JPMorgan Chase. Sergio Ordoñez also signed a loan agreement on behalf of Heaven Investments that is governed by New York law.

25.     Non-party Nicolas Ordoñez is, upon information and belief, a citizen of Panama and Colombia and a resident of Barranquilla, Colombia. Nicolas Ordoñez is the son of Oscar and Luz Ordoñez, and is an authorized signatory for Heaven Investments' New York bank accounts at JPMorgan Chase Nicolas Ordoñez is a manager and registered agent of the following entities: (a) Boring Tech LLC, (b) Coral Bridge Properties LLC and (c) Phoenix Engineering BT LLC, each of which lists his address as the Fort Lauderdale Property (as defined below). Nicolas Ordoñez also signed a loan agreement on behalf of Heaven Investments that is governed by New York law.

26.     Non-party Waserstein & Nunez PLLC ("**Waserstein**") is a Florida professional limited liability company. Upon information and belief, Waserstein directly or indirectly received funds for Florida real estate investments/projects that originated with San Agustin or one of the other Defendants herein. Plaintiffs have insufficient information to determine if Waserstein received and retained fraudulent transfers that originated with San Agustin.

## IV.    FACTUAL BACKGROUND

### A.    THE ORIGINATION OF THE LOANS

27.    In 2014, Valle, a Colombian oil and gas company, acquired oil and gas contracts relating to four oil fields in Colombia previously owned by Pacific Stratus Energy Colombia Corp ("**Pacific Stratus**"). Valle acquired these contracts through the purchase of a former subsidiary of Pacific Stratus, San Agustin. Valle was and is ultimately owned and controlled by Mr. Ordoñez.

28.    To fund this acquisition, Valle borrowed from Trade Finance Funding I, Ltd. ("**TFFI**"), through its agent IIG Capital, L.L.C. ("**IIG Capital**"), with San Agustin as the guarantor (the "**2014 Loan**"). Valle's purchase of San Agustin was completed in by year end 2015.

29.    In December 2015, Valle entered into another loan agreement, this time with IIG TOF B.V. ("**TOF BV**"), seeking to borrow additional funds to purportedly fund its payment obligations to Pacific Stratus (the "**2015 Loan**") related to its acquisition of San Agustin.

30.    The 2015 Loan was also funded by TFFI, which acquired the loan from TOF BV.

31.    The 2014 loan agreement (the "**2014 Loan Agreement**") and 2015 loan agreement (the "**2015 Loan Agreement**") were each amended from time to time, including via an October 2019 amendment (the "**Fifth Amendment**") that was the fifth amendment to the 2014 Loan Agreement and the second amendment to the 2015 Loan Agreement. As relevant here, the Fifth Amendment consolidated the outstanding debt under the 2015 Loan Agreement as a loan under the 2014 Loan Agreement (such combined loans, the "**Loan**"). The Fifth Amendment also included an agreement by San Agustin to elevate its position from guarantor to borrower under the Loan. And, in the Fifth Amendment, San Agustin acknowledged that, as of the date of the Fifth Amenedment, it owed $15,450,000 in principal, plus interest on account of the Loan.

### B.    SAN AGUSTIN FAILED TO REPAY THE LOAN

32.    By way of a Purchase and Sale Agreement dated June 6, 2017 and subsequent transfer agreement dated July 3, 2017, TFFI sold to Trade Finance Trust ("**TFT**") all of its right, title and interest in and to various assets, including rights under the 2014 Loan Agreement and the 2014 Loan. In August 2017, TFT acquired TOF BV's rights under the 2015 Loan Agreement, including the 2015 Loan. GTFF and STFF, as Participants, entered into separate but substantially identical master participation agreements (together, the "**Master Participation Agreements**") with TFT, as Seller, on May 31, 2017, and June 30, 2017, respectively. Pursuant to the Master Participation Agreements, TFT sold Participation Interests (as defined in the Master Participation Agreements) to GTFF and STFF, in certain loans including the 2014 Loan and the 2015 Loan.

33.    By way of winding up orders entered on October 23, 2019 and January 31, 2020, respectively, GTFF and STFF were placed into official liquidation in the Cayman Islands. By orders dated February 19, 2020 and June 19, 2020, respectively, this Court recognized GTFF's and STFF's liquidation proceedings as foreign-main proceedings under Chapter 15 of the Bankruptcy Code.

34.    By order dated October 8, 2020, this Court authorized the JOLs to enter into an assignment agreement with TFT pursuant to which TFT assigned to the Debtors, all of its right, title and interest in, to and under, among other loans, the Loan. By virtue of that assignment, Plaintiffs are the Lender within the meaning of the loan documents concerning the Loan. In addition, TFT assigned to the Debtors all of its legal and equitable claims related to the loans, including the Loan.

35.    On March 12, 2021, Plaintiffs commenced an adversary proceeding against San Agustin and others. On April 27, 2023, this Court entered a *Decision on Parties' Motion for*

*Summary Judgment* in which it granted Plaintiffs' motion for summary judgment and denied defendants' cross-motion. A judgment was entered the same day.

36.     On July 7, 2023, the Court entered an amended judgment in the amount of $25,815,916.15 following the Court's award of certain fees and costs to the Plaintiffs (the "**Amended Judgment**"). San Agustin appealed from the Amended Judgment and on March 15, 2024, the District Court issued an Opinion and Order affirming the Amended Judgment. No further appeals have been taken and the time to do so has long expired.

### C.      PLAINTIFFS' POST-JUDGMENT DISCOVERY EFFORTS REVEAL THE FRAUD PERPETRATED BY MR. ORDOÑEZ

37.     Following entry of the Judgment, Plaintiffs served discovery demands on various parties seeking documents concerning San Agustin's financial condition. Through their review of the documents they obtained, the Plaintiffs have developed a detailed understanding of Mr. Ordoñez's interconnected network of companies. A copy of the Ordoñez-affiliated entity structure chart is attached hereto as Exhibit A. The bank statements and additional documents Plaintiffs obtained make clear why San Agustin was unable to pay its debts – Mr. Ordoñez looted the business causing San Agustin to transfer out more than $100 million to both enrich himself and his family and to fund unrelated business.

38.     Among others, Plaintiffs served discovery on San Agustin, Valle, Lakeview Green Corp., Green Acres Development Ltd., Cloister Blue Ltd., Mid Summer Capital Corp. and Sabana Holdings LLC, each of which is controlled by Mr. Ordoñez.  Plaintiffs also served Rule 2004 discovery on OSDI, German Osorio, Jackie Diaz, Waterstone and Waserstein. Each of those parties refused to meaningfully respond to Plaintiffs' requests and, for example, German Osorio produced hundreds of blank pages in response to Plaintiffs' subpoenas. Much of the information learned by the Plaintiffs came predominantly from the productions of financial institutions.

39.    Mr. Ordoñez's total disregard for his companies' creditors was apparent immediately after the 2014 Loan was funded. As stated, the purpose of the loan was represented by Mr. Ordoñez's company Valle to be financing the purchase of San Agustin from Pacific Stratus. Instead, shortly the 2014 Loan was funded, Valle transferred those funds to defendant Heaven Investments for no consideration. The 2014 Loan Agreement was later amended to increase the amount available under the 2014 Loan and these additional loan proceeds were likewise transferred by Valle to Heaven Investments.

## V.    MR. ORDOÑEZ ENRICHES HIMSELF AND HIS FAMILY AT THE EXPENSE OF SAN AGUSTIN  AND ITS CREDITORS

### A.    <u>HEAVEN INVESTMENTS</u>

40.    Mr. Ordoñez is the principal of Heaven Investments and beneficially owns all or substantially all of its issued and outstanding shares. Heaven Investments repeatedly received transfers representing the proceeds of the Loan, and otherwise received large transfers from San Agustin, all without consideration. Upon information and belief, none of those funds have been returned.

41.    As stated, on or about March 10, 2014, Valle entered into the 2014 Loan with IIG Capital, as agent for TFFI for the purpose of investing in San Agustin and for capital expenditures related to the oilfields. Rather than using the 2014 loan proceeds for their intended purpose, Valle almost immediately transferred them to Heaven Investments.

42.    Having improperly directed the Loan proceeds to Heaven Investments, which was neither a borrower nor guarantor of the Loan or its constituent parts, Mr. Ordoñez took steps to enrich himself using those loan proceeds by causing Heaven Investments to further transfer the Loan proceeds to (i) defendant Drinian Port, his personal private equity/alternative investments entity, (ii) a Heaven Investments securities trading account maintained at JP Morgan, (iii) an

account at JP Morgan that he jointly owned with defendant Luz Ordoñez ($2,800,000), which funds were then transferred to Drinian Port ($1,500,000) and Hyundai Heavy Industries in connection with the Termonorte project (as discussed below).

43.     In all, Mr. Ordoñez caused Valle Energy / San Agustin and Pretium (as discussed in greater detail below) to transfer more than $28,800,000 to Heaven Investments, for no consideration. No part of those funds have been repaid to San Agustin. The below table details the transfers.

| Transfers to Heaven Investments[4] | | |
|---|---|---|
| Date | Transferor | Amount |
| 5/12/2014 | Valle Energy | $10,500,000 |
| 4/15/2015 | Valle Energy | $2,020,000 |
| 6/10/2015 | Valle Energy | $1,460,000 |
| 3/26/2018 | Valle Energy | $1,500,000 |
| 5/01/2018 | San Agustin | $1,883,400 |
| 8/03/2020 | San Agustin | $8,525,347 |
| 9/19/2022 | Pretium | $3,000,000 |

44.     As discussed, the JOLs were appointed over GTFF in late 2019 and over STFF in early 2020. Following their appointment, the JOLs sought to contact the obligors (*i.e.*, San Agustin / Valle) for the loans in which GTFF and STFF then held participation interests (but would soon be elevated to lender interests) to negotiate a repayment schedule for the outstanding debt. Plaintiffs have subsequently learned that, shortly after the JOLs initial contact with San Agustin, and while discussions about repayment were just beginning, in August 2020, Mr. Ordoñez (upon information and belief) caused San Agustin to transfer/deliver securities with a market value of $8,525,347 to Heaven Investments free of payment (*i.e.*, for no consideration).

---

[4] A full list of transfers to Heaven Investments is set forth in <u>Schedule 3</u>.

45.      San Agustin's audited financial statements for the relevant period do not reflect any related party transactions, nor any contractual agreement or obligation between San Agustin and Heaven Investments. As a result, Mr. Ordoñez effectively stripped assets from the San Agustin business for his own personal benefit that otherwise would have been available to repay the Loan.

## B.      **DRINIAN PORT**

46.      Mr. Ordoñez has described Drinian Port as his personal investment company. The JOLs have obtained documents which show that Mr. Ordoñez used Drinian Port as a vehicle for real estate-related equity, debt and other investments including, without limitation, loans secured by real estate, bridge and mezzanine financings, and investments in real estate-related funds.

47.      Valle has directly or indirectly funded all of Drinian Port's investments. At least $6,100,000 of the transfers made to Drinian Port were transferred directly by Valle or indirectly through Heaven Investments, which obtained its funding from Valle. Each of these transfers was made for no consideration. The transfers deprived Valle and San Agustin of funds that could have been used to repay to Loan. Drinian Port's investments were later transferred to Pretium (as described below).

| Transfers to or for the benefit of Drinian Port | | | |
|---|---|---|---|
| Date | Transferor | Transferee | Amount |
| 5/12/2014 | Valle Energy | Carlton Fields PC (fbo) Drinian Port | **$500,000** |
| 5/30/2014 | Heaven Inv. (from Valle) | Ordoñez joint account | $1,500,000 |
| 5/30/2014 | Ordoñez joint a/c | Drinian Port | **$1,500,000** |
| 9/29/2014 | Valle Energy | Carlton Fields PC (fbo Drinian Port) | **$600,000** |
| 6/10/2015 | Valle Energy | Heaven Inv. | $1,460,000 |
| 6/10/2015 | Heaven Inv | Drinian Port | **$500,000** |
| 10/19/2015 | Heaven Inv | Drinian Port | **$1,000,000** |
| 6/08/2016 | Heaven Inv | Drinian Port | **$1,000,000** |
| 11/22/2017 | Heaven Inv | Drinian Port | **$1,000,000** |

48.     After receiving these fraudulent transfers, Drinian Port made commitments to fund $7,750,000 in private equity transactions involving real estate, illiquid investment opportunities and other securities. Through their post-judgment discovery efforts, the JOLs have uncovered documents confirming that Drinian Port was receiving distributions from its investment portfolio but, upon information and belief, none of those profits were used to repay the funding ultimately received from Valle (via Heaven Investments). Certain funds were repaid to Heaven Investments.

49.     In or about mid-2020, Mr. Ordoñez transferred his investment portfolio to Pretium, either by assignment (for illiquid investments) or through Heaven Investments. To effectuate the transfer of ownership, Drinian Port transferred its cash and securities to Heaven Investments "free of payment". Heaven Investments then transferred those assets on to Pretium, also free of payment. A more complete list of transfers made to Pretium is attached as <u>Schedule 7</u> and incorporated herein by reference; however, Drinian Port's investments in limited partnership interests were assigned to Pretium, free of payment, and are not reflected in the schedule. Certain of those investments may have been liquidated but, upon information and belief, none of the original investment monies were ever returned or repaid to Valle or San Agustin.

## C.     MR. ORDOÑEZ PARTNERS WITH GERMAN OSORIO TO CONVERT SAN AGUSTIN ASSETS

50.     Defendant German Osorio was retained by IIG to be its regional agent to source business in Colombia (and other locations) and represent IIG's interests in collecting on loans made to local borrowers, including those made to San Agustin. However, at the same time, German Osorio was also working with Mr. Ordoñez to help him loot San Agustin including through payments to German Osorio's own companies, OSDI and, upon information and belief, Bliwise Int'l.

i.  <u>Bliwise Int'l</u>

51.    From July 2015 until approximately April 2016, San Agustin made transfers averaging about $10,000 per month to Bliwise Int'l. From February 2019 to September 2021, San Agustin continued to make transfers to Bliwise Int'l, mostly in $10,000 increments, however, larger dollar transfers were also made including four payments totaling approximately $1,235,000, consisting of: (a) $193,117 on March 15, 2019, (b) $210,000 on August 1, 2019, (c) $336,000 on October 21, 2019, (d) $336,000 on October 16, 2020, and (e) $159,600 on September 27, 2021.

52.    Upon information and belief, San Agustin had no contractual relationship with Bliwise Int'l that obligated San Agustin to make the above-referenced transfers. In total, San Agustin transferred more than $1,400,000 to Bliwise Int'l from July 2015 to September 2021.

ii.  <u>OSDI</u>

53.    German Osorio and Jackie Diaz own defendant OSDI. From June 2021 to October 2022, Mr. Ordoñez caused San Agustin to make payments to OSDI totaling at least $960,311. Each of these transfers was made after Plaintiffs filed their adversary proceeding against San Agustin on March 12, 2021. At the time of the transfers, San Agustin was insolvent and the transfers were made for no consideration during the pendency of the adversary proceeding. The Amended Judgment in that matter remains unsatisfied.

54.    Upon information and belief, OSDI also received more than $420,000 in cash transfers from Spring Assets (discussed further below) and more than $350,000 in cash transfers from Bliwise Int'l, portions of which constitute subsequent transfers of funds that originated with San Agustin. These cash transfers to OSDI were made between from January 2020 and February 2023, in other words, while the JOLs were attempting to recover the debt owed by San Agustin. In or around August 2021, German Osorio and Jackie Diaz purportedly acquired real property located at 314 Isle of Capri, Fort Lauderdale, FL (the "**Isle of Capri Property**"). Of the transfers

17

referenced above, OSDI transferred (a) $150,000 of the funds received from San Agustin and (b) $406,358 of the funds received from Spring Assets (originally funded by San Agustin), totaling $556,358, to Waterstone as funding for the acquisition of the Isle of Capri Property, which was purchased for $1,649,000.[5] Based on the documents obtained, it is currently unclear how the balance of the purchase price was funded.

55.    In or around September 2023, the Isle of Capri Property was sold for $3,050,000. From the purchase price, German Osorio and Jackie Diaz received $533,731 after the sale closed. Based on the documents obtained, it is currently unclear how the balance of the sale proceeds was dispersed.

56.    German Osorio and Jackie Diaz retained the sales proceeds they received and, coupled with other monies they were, upon information and belief, holding for Oscar Ordoñez at an account maintained by Amerant Bank, transferred $649,057 to Waterstone for the closing on another property located at 16485 Collins Ave, Apt. 2231, Sunny Isles Beach, FL, which was acquired for $1,915,000. The property has not been sold.

57.    Upon information and belief, German Osorio has used the funds received by Bliwise and OSDI, that originated with Valle, San Agustin and Spring Assets, to make real estate investments on behalf of Mr. Ordoñez.

58.    Bliwise Int'l, OSDI and German Osorio/Jackie Diaz have received no less than $5,000,000 of fraudulent transfers originating from Valle, San Agustin or Spring Assets. No portion of the funds have been repaid. Upon information and belief, there are no written contracts to support these payments. To the extent these funds were used by German Osorio or the entities he controlled for his or their benefit, those funds are recoverable by Plaintiffs as fraudulent

---

[5]   An additional $10,000 was paid to Waserstein Capital as a financing fee.

conveyances. To the extent German Osorio, Bliwise Int'l or OSDI were acting as nominee for Oscar Ordoñez, then these transfers are recoverable from Oscar Ordoñez.

### D.   THE WATERSTONE TRANSFER

59.     On March 29, 2021, San Agustin made a payment for $833,890.10 to Waterstone (the "**Waterstone Transfer**"). On or about December 23, 2023, the JOLs served a Rule 2004 subpoena on Waterstone seeking more documents and communications about the Waterstone Transfer in addition to documents and communications related to any other transactions related to San Agustin or its affiliates. Of the limited documents produced, none provided any justification for the Waterstone Transfer.

60.     On or about March 29, 2021, Blue Canal acquired the Fort Lauderdale Property for $3,900,000. The closing was handled by Waterstone. The Waterstone Transfer was made on the same date as the closing of Blue Canal's purchase of the Fort Lauderdale Property. Upon information and belief, Mr. Ordoñez has an ownership interest in Blue Canal.

61.     Based on this foregoing, and upon information and belief, Mr. Ordoñez caused San Agustin to make the Waterstone Transfer at a time when it was insolvent and during the pendency of Plaintiffs' adversary proceeding. It appears that San Agustin did not receive any consideration for this transfer.

62.     In summary, upon information and belief, Mr. Ordoñez acquired either limited partnership interests related to real estate projects or invested directly in limited liability companies that acquired real estate with the aid of German Osorio and used Waterstone as closing agent for the acquisition and sales of many of the properties. Despite serving Rule 2004 discovery requests on German Osorio and Waterstone, neither party provided documents related to these transactions. From the limited information available to them, Plaintiffs believe that the following real estate

investments were made with the proceeds of fraudulent transfers that are sought to be avoided herein:

- On March 9, 2021, San Agustin funded $833,910 to Waterstone. Upon information and belief, those funds were used later that month in the $3,900,000 purchase of the Fort Lauderdale Property.

- On August 10, 2021, San Agustin and Spring Assets funded no less than $566,358 of the $1,649,000 purchase price for 314 Isle of Capri Property which was purchased by German Osorio and Jackie Diaz.

- On December 23, 2021, Spring Assets funded no less than $900,000 of Pretium's investment in South Miami Nursing LLC.

- On May 5, 2022, Chianto, with funds originating from San Agustin, funded a $1,000,000 investment in Waterstone Holiday Inn LLC.

- On June 22, 2022, Chianto, with funds originating from San Agustin, funded a $500,000 investment in Blue Quinta 163 St LLC.

- On January 18, 2024, upon information and belief, German Osorio uses proceeds from the sale of the 314 Isle of Capri Property to invest $649,057 in the acquisition of 16485 Collins Avenue, Unit 2231 Fort Lauderdale.

A list of the real estate transactions that that were funded at least in part with initial or subsequent transfers that Plaintiffs are seeking to recover in this action is set forth in Schedule 11 and incorporated herein by reference.

63.     German Osorio has also purportedly invested in a joint venture, RPM Codigo Holdings ("**Codigo**"), which acquires and sells real estate in and around Baltimore, Maryland. Based on review of third-party discovery, further information is required to determine whether German Osorio is acting as nominee for Mr. Ordoñez in the venture. However, the Codigo investments are at a minimum partially funded by subsequent transfers that originated from San Agustin. At least $275,000 has been transferred from San Agustin or Bliwise Int'l to OSDI through to Codigo from June 2020 to April 2021. German Osorio has not produced responsive documents to a Rule 2004 subpoena requesting information about these investments, including the Amerant

Bank account statements. Regardless, OSDI, German Osorio and Jackie Diaz are subsequent transferees of the initial fraudulent transfers made from San Agustin to Bliwise Int'l.

64.     Upon information and belief, additional funds that originated from Valle and San Agustin continue to be used to acquire additional properties in the U.S.

## VI.     MR. ORDOÑEZ USED SAN AGUSTIN TO SUPPORT HIS UNRELATED BUSINESSES

65.     As stated, San Agustin is actively operating in the oil and gas business in Colombia and its operations center around the extraction and sale of oil and gas.

66.     Termonorte SAS ("**Termonorte**") was another entity controlled by Mr. Ordoñez through his beneficial ownership of Axia Power. In February 2017, Termonorte awarded an $80 million contract to Hyundai Heavy Industries to build a power plant in Santa Marta, Magadela, Colombia. The plant became operational in October 2018 and was sold to Glenfarne Group in September 2022.

67.     Mr. Ordoñez caused more than $79,100,000, plus debt service, to be diverted from Valle and San Agustin to fund the development of the Termonorte project. The list of the transfers made to or for the benefit of Mr. Ordoñez's personal investments, including Termonorte are attached as Schedule 2 and incorporated herein by reference.

68.     Mr. Ordoñez's involvement with the Termonorte project goes back to at least 2015. Indeed, as early as July 2015, Mr. Ordoñez caused Valle to make cash transfers to Termonorte. As project development began, Termonorte's cash needs increased and Mr. Ordoñez sought to satisfy those needs through borrowings by San Agustin.

69.     San Agustin entered into several financing arrangements with JP Morgan, including two different lines of credit and a separate promissory note facility (the "**JPMC Debt**"). The JPMC

Debt proceeds were used to pay the development costs of the Termonorte project yet San Agustin serviced the debt and ultimately repaid it.

70.     San Agustin was also separately the borrower on a credit facility originated by Stabilis V Fund ("**Stabilis**") and acted as issuer for standby letters of credit in favor of third parties relating to the Termonorte project. These facilities included a June 24, 2019, standby letter of credit issued by JPMorgan Chase with San Agustin listed as the "liability party" for $705,000 in favor of Hyundai Heavy Industries, more than one year after the Termonorte project was operational.

71.     In sum, Mr. Ordoñez caused Valle and San Agustin to spend more than $79,100,000 to fund the development of a project for another company he owned and from which he handsomely profited when the project was sold. Based on available bank statements, it appears that San Agustin was repaid only a fraction of the funding it provided to the project. The diversion of cash from San Agustin to fund the costs of the Termonorte project rendered San Agustin unable to satisfy the Amended Judgment.

## VII.    MR. ORDOÑEZ EXHIBITED COMPLETE DOMINION AND CONTROL OVER THE ENTITY DEFENDANTS

72.     Each of the Ordoñez Instrumentalities is under Mr. Ordoñez's complete control, whether through direct shareholding or through Mr. Ordoñez's (delegated) control over the entities. Further, while certain entities, including Drinian Port and Heaven Investments, had purportedly independent shareholders and directors, the independence of those parties was a sham and those shareholders agreed that they hold shares only as nominee of and for the benefit of Mr. Ordoñez. For their part, the nominee directors agreed that each (a) is a director in name only and (b) they act on behalf of the principal (*i.e.*, Mr. Ordoñez) on his instructions.

73.     Where the shareholdings are nominally controlled by certain family trusts, the purportedly independent trustees delegated authority to Mr. Ordoñez to control the bank accounts

of the corporate entities owned by the trusts. At all times, all decision-making authority was vested solely in Mr. Ordoñez and none of the Ordoñez Instrumentalities could invest, spend money or incur any obligations without his prior approval.

## VIII.  MR. ORDOÑEZ HAS FRUSTRATED PLAINTIFFS' COLLECTION EFFORTS

74.    Having looted tens of millions of dollars from San Agustin, ensuring that it could not repay the debt it owed Plaintiffs, Mr. Ordoñez has taken further steps to try and ensure the success of his scheme. Among others, Mr. Ordoñez has caused San Agustin to file petitions for bankruptcy in both Colombia and Panama. Neither proceeding has been recognized in the United States.

75.    In San Agustin's Colombian bankruptcy, San Agustin sought to discharge Plaintiffs' debt as "contingent', even though the Judgment had already been entered. Had that effort been successful, Plaintiffs would have had no ability to vote on San Agustin's bankruptcy plan permitting Mr. Ordoñez to retain his ownership over San Agustin.

76.    However, the Colombian bankruptcy was dismissed because Mr. Ordoñez (a) failed to disclose the relationship between San Agustin and its affiliated creditors that were permitted to vote on the bankruptcy plan (i.e. not labelled as contingent) and (b) failed to produce San Agustin's accounts to the Colombian bankruptcy court.

77.    The Panamanian bankruptcy is on the verge of being dismissed for similar reasons – Mr. Ordoñez has failed to provide the court- appointed administrator with corporate records and information about alleged creditors. In those proceedings, San Agustin listed entities such as Consorcio Minero, Spring Assets and Las Quinchas Petroleum as creditors without noting that these were affiliated parties, as each of these entities are under Mr. Ordoñez's control. The JOLs objected to these claims and the court-appointed administrator agreed with the JOLs' objection.

78.    Finally, Mr. Ordoñez has caused San Agustin to publish materially misleading financial statements, which failed to disclose significant debts and/or related-party transfers for which San Agustin received no value in return.

79.    As a result of Mr. Ordoñez's wrongful and inequitable conduct that has caused material financial damages to Plaintiffs and their creditors, Plaintiffs believe the appropriate remedy is to pierce the corporate veil of Valle, San Agustin and the Ordoñez Instrumentalities and hold Mr. Ordoñez personally liable for the Amended Judgment.

### COUNT I
**Avoidance and Recovery of the UFCA Transfers as Actual Fraudulent Transfers
(NY DCL (UFCA) §§ 276, 278)[6]
Heaven Investments, Spring Assets, Axia Power, Consorcio Minero, Bliwise Int'l, OSDI,
Drinian Port and Mr. Ordoñez, as Initial Transferees or the Parties For Whose Benefit
Certain Initial Transfers Were Made**

80.    The Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

81.    It is not entirely clear to Plaintiffs when Mr. Ordoñez made the decision that San Agustin was not going to repay the Loan. It is clear, however, that as soon as Valle first borrowed $10,000,000 from TFFI in March 2014, Mr. Ordoñez caused Valle to transfer those initial Loan proceeds to Heaven Investments, which used those funds and other San Agustin cash flows over time to fund Mr. Ordoñez's personal investment vehicles: Heaven Investments, Drinian Port and Spring Assets, all to the detriment of Valle's and San Agustin's creditors including TFFI, TFT, and the Plaintiffs. Any claims TFFI and/or TFT had concerning this misconduct have been assigned to Plaintiffs.

---

[6] For transfers made prior to April 4, 2020, the Uniform Fraudulent Conveyance Act ("**UFCA**") applies to the New York Debtor & Creditor Law ("**NY DCL**") fraudulent conveyance claims. For fraudulent transfers made on or after April 4, 2020, the Uniform Voidable Transactions Act ("**UVTA**") applies.

82.    Mr. Ordoñez's priority was expanding his portfolio, including the development of Termonorte, which required additional capital. The oil and gas operations of Valle and San Agustin did not produce enough cash flow to both pay their obligations to Plaintiffs (and their predecessors in interest) and fund Mr. Ordoñez' investment priorities. From the outset, Mr. Ordoñez made increasing his investment portfolio his priority. Upon information and belief, Mr. Ordoñez later caused German Osorio and OSDI to set up special purpose vehicles to invest in U.S. real estate so as to avoid holding assets in his name.

83.    In early 2017, after Valle's acquisition of San Agustin had closed, Mr. Ordoñez caused San Agustin to borrow the necessary amounts to fund the significantly increased capital requirements for the Termonorte project. As a result, Mr. Ordoñez caused San Agustin to take on an enormous amount of debt, including the JPMC Debt and the Stabilis loans from 2017 to 2019, and to both repay that debt and fund his other personal investments. Thereafter, Mr. Ordoñez diverted the Termonorte sales proceeds that could, and should, have been paid to San Agustin to compensate it for funding the project's development. Those proceeds would have been more than sufficient to satisfy San Agustin's obligations under the Amended Judgment.

84.    As further evidence of Mr. Ordoñez's fraud on his creditors, neither Valle's nor San Agustin's financial statements, which were purportedly audited by an independent accounting firm, disclosed any of these related-party transactions or the debt that San Agustin underwrote related to the Termonorte project.

85.    As a result of his total domination of Valle and San Agustin, Mr. Ordoñez's fraudulent intent is attributable to Valle and San Agustin.

86.    At the time of each of the transfers sought to be avoided herein, Plaintiffs were either creditors with matured claims against Valle and San Agustin or are the assignees of creditors

25

with matured claims against those entities based on, at least, the terms of the 2014 Loan Agreement and the 2015 Loan Agreement. Any claims held by either TFFI or TFT relating to the Loan or its constituent parts, the 2014 Loan and the 2015 Loan (including any claims to recover fraudulent conveyances) have been assigned to Plaintiffs.

87.     After entry of the Judgment, Plaintiffs sought discovery from San Agustin about its assets. Other than providing an outdated financial statement, San Agustin refused to produce any meaningful documentation. Thereafter, Plaintiffs undertook third party discovery to determine the reason for San Agustin's Colombian bankruptcy filing which was made on January 30, 2023.

88.     Plaintiffs received discovery responses from one of San Agustin's known bank relationships in November 2023 after counsel for Mr. Ordoñez unsuccessfully sought to have this Court quash the subpoena in September 2023. That production led the Plaintiffs to submit additional discovery requests to: (a) that first bank for additional bank account statements, (b) additional bank relationships and (c) to non-bank third parties based on the information reviewed. Those discovery responses were received throughout 2024 and into 2025. Certain parties either failed to respond or refused to produce relevant information, including OSDI, German Osorio, Jackie Diaz, and Waterstone. The responses received from the banks and certain third parties led to supplemental requests for information about the parties' internal cash transfers, with such information received on February 13, 2025, and May 15, 2025. That information led to further analysis of corporate documents filed with the Florida Secretary of State and real estate transaction and tax documents from Florida county websites. It was only upon receipt of these final statements and the additional analysis that Plaintiffs could identify the recipients of certain transfers and could conclude that the transfers in question appeared to be fraudulent. Thus, for purposes of the "discovery rule", to the extent applicable, the appropriate date to determine if this action was

timely commenced should be May 15, 2025, the date that Plaintiffs received the final document productions that caused them to believe that the transfers identified herein are subject to avoidance.

89.    Schedule 1 lists transfers made by Valle, San Agustin and the Ordoñez Instrumentalities prior to April 4, 2020 (the "**UFCA Transfers**")[7], including certain transfers Plaintiffs identified that were made with the actual intent to hinder, delay, and/or defraud Valle's and San Agustin's creditors, including TFFI, and TFT (whose claims have been assigned to the Plaintiffs) and the Plaintiffs themselves. San Agustin received no consideration in exchange for such transfers. Those UFCA Transfers are thus avoidable as actual fraudulent transfers pursuant to former NY DCL (UFCA) § 276.

90.    Plaintiffs seek to avoid and recover fraudulent conveyances made by Valle, San Agustin or the other Defendants (as specified in the attached schedules) in the amount of $121,698,375. These amounts may be recovered from Heaven Investments, Spring Assets, Axia Power, Consorcio Minero, Bliwise, Int'l, OSDI, Drinian Port and Mr. Ordoñez as initial transferees and/or the party for whose benefit those transfers were made, and from Drinian Port, Chianto and Oscar and Luz Ordoñez as subsequent transferees (Plaintiffs' subsequent transferee claims are asserted in Count III of this Complaint). Further, because Plaintiffs have valid fraudulent conveyance claims against Heaven Investments, Spring Assets, Axia Power, Consorcio Minero, Bliwise Int'l, OSDI, Drinian Port and Mr. Ordoñez, Plaintiffs are creditors of those parties within

---

[7]    Schedule 1 lists nearly $182,000,000 of transfers made among Valle, San Agustin, the Ordoñez Instrumentalities and other Defendants who have conducted business with or on behalf of Mr. Ordoñez.  Certain of these UFCA Transfers require additional investigation but Plaintiffs believe a majority of these payments (more than $123,000,000) were fraudulent as to the transferor's existing or future creditors – and therefore, avoidable and recoverable in an amount sufficient to satisfy the Amended Judgment and accruing statutory interest plus legal fees and expenses in connection with this action. Schedules 2-10 lists the fraudulent UFCA Transfers received by each Defendant (other than Consorcio Minero, which only received one transfer and is listed on Schedule 1, which is incorporated herein by reference).

the meaning of the relevant sections of the NY DCL and therefore can, and do, seek to avoid and recover intentional fraudulent conveyances made by them.

91.    The UFCA Transfers that Plaintiffs are seeking to avoid and recover were made to or for the benefit of the following entities:

     i.    $18,043,400 was transferred to Heaven Investments;

     ii.    $4,134,609 was transferred to or for the benefit of Drinian Port;

     iii.    $10,454,000 in net transfers were made to Spring Assets;

     iv.    $1,352,500 was transferred to Axia Power;

     v.    $7,099,681 was transferred to Consorcio Minero;

     vi.    $989,117 was transferred to Bliwise Int'l;

     vii.    $10,000 was transferred to OSDI; and

     viii.    $79,615,068 was either transferred directly to Oscar and Luz Ordoñez or was transferred in connection with the Termonorte project or other investments for the benefit of Mr. Ordoñez.

92.    The UFCA Transfers can be recovered pursuant to former NY DCL (UFCA)§ 278 from Heaven Investments, Drinian Port, Spring Assets, Axia Power, Consorcio Minero, Bliwise Int'l, OSDI and Mr. Ordoñez in the amounts listed above.

93.    Because Valle and San Agustin, acting under the dominion and control of Mr. Ordoñez, made the UFCA Transfers with actual intent to hinder, delay or defraud Plaintiffs and/or their predecessors in interest, as creditors, pursuant to former NY DCL (UFCA) § 276-a, Plaintiffs are entitled to recover their reasonable attorneys' fees and expenses as fixed by the Court.

94.    Plaintiffs reserve the right to amend the amount of UFCA Transfers to the extent discovery uncovers additional transfers in addition to those listed in the attached schedules.

**COUNT II**
**Avoidance and Recovery of UFCA Transfers as Constructive Fraudulent Transfers**
**(NY DCL (UFCA) §§ 273-275, 278)**
**Heaven Investments, Spring Assets, Axia Power, Consorcio Minero, Bliwise Int'l, OSDI,**
**Drinian Port and Mr. Ordoñez, as Initial Transferees or the Parties For Whose Benefit**
**Certain Initial Transfers Were Made**

95.     The Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

96.     The UFCA Transfers are also avoidable as constructive fraudulent transfers pursuant to NY DCL (UFCA) §§ 273-275.

97.     At the time that each of the UFCA Transfers was made, Plaintiffs or their predecessors in interest were creditors with matured claims against Valle and/or San Agustin. Any such claims, including any related claims to avoid and recover fraudulent conveyances, have been assigned to Plaintiffs.

98.     Plaintiffs seek to avoid and recover fraudulent conveyances made by Valle, San Agustin or the other Defendants (as specified in the attached schedules) in the amount of $109,813,766. These amounts may be recovered from Heaven Investments, Drinian Port Spring Assets, Axia Power, Consorcio Minero, Bliwise Int'l, OSDI and Mr. Ordoñez as initial transferees and/or the party for whose benefit those transfers were made, and from Drinian Port, Chianto, and Oscar and Luz Ordoñez as subsequent transferees (Plaintiffs' subsequent transferee claims are asserted in Count III of this Complaint).

99.     Valle or San Agustin did not receive fair consideration in exchange for the UFCA Transfers.

100.     Valle or San Agustin were insolvent at the time of each of the UFCA Transfers or were rendered insolvent by the UFCA Transfers. The UFCA Transfers also left Valle or San

Agustin with unreasonably small capital, and each of Valle and San Agustin knew that it would incur or intended to incur debts beyond its ability to pay as they matured.

101.    As of the date of each of the UFCA Transfers, Plaintiffs or their predecessors in interests were creditors of Valle and San Agustin.

102.    As referenced in Paragraphs 88 above, using May 15, 2025 as the date the claims accrued under the "discovery rule," this action has been timely commenced to the extent any of the transfers fall outside the four-year statute of limitations provided by NY DCL (UFCA) § 278(a).

103.    As set forth above the UFCA Transfers were made to or for the benefit of the following entities:

    i.    $17,543,400 was transferred to Heaven Investments;

    ii.    $1,100,000 was transferred to or for the benefit of Drinian Port;

    iii.    $10,454,000 in net transfers were made to Spring Assets;

    iv.    $1,352,500 was transferred to Axia Power;

    v.    $7,099,681 was transferred to Consorcio Minero;

    vi.    $989,117 was transferred to Bliwise Int'l;

    vii.    $10,000 was transferred to OSDI; and

    viii.    $71,265,068 was either transferred directly to Oscar and Luz Ordoñez or was transferred in connection with the Termonorte project for the benefit of Mr. Ordoñez.

104.    The UFCA Transfers can be recovered pursuant to former NY DCL (UFCA) § 278 from Heaven Investments, Drinian Port, Spring Assets, Axia Power, Consorcio Minero, Bliwise Int'l, OSDI and Mr. Ordoñez, as initial transferees or the parties for whose benefit certain transfers were made, in the amounts listed in paragraph 103 above.

105.    Plaintiffs reserve the right to amend the amount of UFCA Transfers to the extent discovery uncovers additional transfers in addition to those listed in the attached schedules.

## COUNT III
### Recovery of the UFCA Transfers as Actual Fraudulent Transfers
### and Constructive Fraud Transfers
### (NY DCL (UFCA) §§ 273-275, 276, 278)
### Drinian Port and Oscar and Luz Ordoñez (jointly), as Subsequent Transferees

106.    The Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

107.    To the extent the UFCA Transfers are avoided under Count I and Count II, certain of the transfers are recoverable from subsequent transferees pursuant to former NY DCL (UFCA) § 278 unless such transferees can demonstrate that the transfers were received for fair consideration.

108.    As referenced above, San Agustin transferred $7,099,681 to Consorcio Minero on November 6, 2019. Two days later, Consorcio Minero transferred $7,050,000 to Chianto on November 8, 2019. Chianto is therefore subsequent transferee of Consorcio Minero for $7,050,000 of the payment, which can be recovered from Chianto pursuant to former NY DCL (UFCA) § 278.

109.    Schedule 1 also illustrates how Mr. Ordoñez caused a series of transfers among his various entities in quick succession, with certain funds transferred to affiliates in connection with Mr. Ordoñez's investment portfolio while other transfers (originating from San Agustin) conveyed a personal benefit on Mr. Ordoñez as they served to repay a portion of the outstanding Termonorte project debt, to which he was a personal guarantor.

110.    The avoidable UFCA Transfers received by subsequent transferees are as follows:

i.      Drinian Port received $2,000,000 as subsequent transferee of Heaven Investments ($500,0000) and of Oscar and Luz Ordoñez ($1,500,000, which amount was received from Heaven Investments);

ii.     Oscar and Luz Ordoñez received $2,800,000 as subsequent transferee of Heaven Investments; and

iii.    Chianto received $7,050,000 as subsequent transferee of Consorcio Minero.

31

111.    Because the UFCA Transfers are avoidable as actual and/or constructive fraudulent

transfers, they may be recovered pursuant to former NY DCL (UFCA) § 278 from Mr. Ordoñez

and Luz Ordoñez (jointly) and Drinian Port as subsequent transferees in the amounts referred to in

paragraph 110 above.

112.    Because Valle, San Agustin, Heaven Investments and Consorcio Minero, acting

under the dominion and control of Mr. Ordoñez, made the UFCA Transfers with actual intent to

hinder, delay or defraud Plaintiffs, as creditors, and because Mr. Ordoñez also controlled Drinian

Port and Chianto, Mr. Ordoñez's fraudulent intent should be imputed to Valle, San Agustin, Heaven

Investments, Consorcio Minero, Drinian Port and Chianto by virtue of his dominion and control

over those entities as described in paragraphs 65-73 above, Plaintiffs are entitled to recover their

reasonable attorneys' fees and expenses as fixed by the Court from the subsequent transferees.

113.    Plaintiffs reserve the right to amend the amount of UFCA Transfers to the extent

discovery uncovers additional transfers later in time from those listed in the attached schedules.

## COUNT IV
### Avoidance and Recovery of UVTA Transfers As Actual Fraudulent Transfers
### (NY DCL (UVTA) §§ 273, 276, 277)
### Heaven Investments, Spring Assets, Chianto, Axia Power, Pretium, OSDI,
### Waterstone, Bliwise Int'l, and Mr. Ordoñez, as Initial Transferee or
### as the Party for Whose Benefit Certain Initial Transfers Were Made

114.    The Plaintiffs repeat and reallege each and every allegation contained in the

preceding paragraphs above as if fully set forth herein.

115.    NY DCL (UVTA) § 273 provides: "A transfer made or obligation incurred by a

debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer

was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    i.    with actual intent to hinder, delay or defraud any creditor of the debtor; or

    ii.    without receiving a reasonably equivalent value in exchange for the transfer or
        obligation, and the debtor.

116.    In addition to the UFCA Transfers, Schedule 1 also lists transfers made by San Agustin and the Ordoñez Instrumentalities after April 4, 2020 (the "**UVTA Transfers**"),[8] including certain transfers Plaintiffs identified that were made with the actual intent to hinder, delay, and/or defraud San Agustin's creditors, including Plaintiffs themselves. San Agustin received no consideration in exchange for such transfers.

117.    Plaintiffs seek to avoid and recover fraudulent conveyances made by San Agustin in the amount of $31,272,174 after April 4, 2020 and such claims are governed by NY DCL (UVTA) § 273. These transfers may be recovered from Heaven Investments, Spring Assets, Axia Power, Pretium, OSDI, Waterstone, Bliwise Int'l and Mr. Ordoñez as initial transferees and/or the party for whose benefit those transfers were made, and from Waterstone, Spring Assets, Axia Power, OSDI, and Bliwise Int'l as subsequent transferees (Plaintiffs' subsequent transferee claims relating to the UVTA Transfers are asserted in Count VI of this Complaint).

118.    Further, because Plaintiffs have valid claims to avoid the fraudulent transfers received by Heaven Investments, Spring Assets, Axia Power, Pretium, OSDI, Waterstone, Bliwise Int'l and Mr. Ordoñez, Plaintiffs are creditors of those parties within the meaning of the relevant sections of the New York Debtor Creditor Law and can, and do, seek to avoid and recover more than $54,031,787 of fraudulent transfers made by them.

---

[8] Schedule 1, which is incorporated herein by reference, lists more than $131,000,000 of transfers made among San Agustin, the Ordoñez Instrumentalities and other Defendants conduct business with or on behalf of Mr. Ordoñez. Certain of these transfers require additional investigation but Plaintiffs believe a majority of these payments (nearly $95,000,000) were fraudulent as to the transferors' existing or future creditors – and therefore, are avoidable and recoverable in an amount sufficient to satisfy the Amended Judgment plus accruing statutory interest and legal fees and expenses in connection with this action. Schedules 2-10, which are incorporated herein by reference, lists the fraudulent UVTA transfers received by each Defendant (other than Waterstone, which only received one transfer). Plaintiffs believe that San Agustin and the Ordoñez Instrumentalities have likely made additional fraudulent transfers than those listed in the schedules and reserve the right to amend the list of fraudulent transfers that are avoidable and recoverable by Plaintiffs.

119.    San Agustin did not receive any consideration, or it received less than reasonably equivalent value, in exchange for making the UVTA Transfers. There are no underlying agreements with the recipients to establish a business purpose for the transfers. Rather, these transfers were made solely to advance Mr. Ordoñez's business interests and expand his investment portfolio without any regard for unpaid obligations to Plaintiffs.

120.    Each of the Ordoñez Instrumentalities knew, by virtue of their being under the common control and dominion of Mr. Ordoñez, and acting at his direction, that the transfers received and/or paid by them were in furtherance of Mr. Ordoñez's personal interests, had no legitimate business purpose and were fraudulent as to their own creditors.

121.    Waterstone failed to produce any documents to support the Waterstone Transfer. Upon information and belief, Waterstone knew that San Agustin was funding an investment in which Mr. Ordoñez was the beneficial owner of Blue Canal, the property owner. This transaction had no connection to San Agustin's business operations and San Agustin received no benefit from the Waterstone Transfer.

122.    German Osorio, who controlled OSDI and, upon information and belief, Bliwise Int'l, acted as nominee for Mr. Ordoñez's U.S. investments due to the pendency of Plaintiff's adversary proceeding against San Agustin.

123.    As referenced in paragraph 88 above, using May 15, 2015 as the date the claims accrued under the "discovery rule," this action has been timely commenced to the extent any of the UVTA Transfers fall outside the four-year statute of limitations provided by NY DCL (UVTA) § 278(a).

124.    The UVTA Transfers are thus avoidable as actual fraudulent transfers pursuant to NY DCL (UVTA) § 276.

125.    The UVTA Transfers were made to or for the benefit of the following entities:

    i.    $3,030,703 in transfers were made by San Agustin for the benefit of Mr. Ordoñez;

    ii.    $3,456,513 in transfers were made by Ordoñez Instrumentalities or OSDI for the benefit of Mr. Ordoñez;

    iii.    $8,525,347 was transferred to Heaven Investments by San Agustin;

    iv.    $3,302,889 was transferred to Heaven Investments by Ordoñez Instrumentalities;

    v.    $13,593,843 was transferred to Spring Assets by San Agustin;

    vi.    $800,000 was transferred to Chianto by Consorcio Minero;

    vii.    Not less than $24,909,748 was transferred to Chianto by Heaven Investments and up to an additional $10,953,842 in transfers may be avoidable;

    viii.    $3,827,000 was transferred to Axia Power by San Agustin;

    ix.    $15,102,500 was transferred to Axia Power by Ordoñez Instrumentalities;

    x.    $6,040,137 was transferred to Pretium by Ordoñez Instrumentalities;

    xi.    $960,311 was transferred to OSDI by San Agustin;

    xii.    $420,000 was transferred to OSDI by Spring Assets;

    xiii.    $833,910 was transferred to Waterstone or for the benefit of Blue Canal by San Agustin; and

    xiv.    $501,060 was transferred to Bliwise Int'l by San Agustin.

126.    NY DCL (UVTA) § 277(b) provides that: to the extent that a transfer is avoidable under NY DCL (UVTA) § 276(a), "(1) … the creditor may recover judgment for the value of the asset transferred … or the amount necessary to satisfy the creditor's claim, whichever is less." The statute also provides that the Court may enter judgment against: "(i) the first transferee of the asset or the person for whose benefit the transfer was made; or (ii) an immediate or mediate transferee of the first transferee."

127.    Therefore, Plaintiffs may recover against each of the initial and subsequent transferees the value of the UVTA Transfers each party received.

128.    Plaintiffs also seek judgment against Mr. Ordoñez to be held jointly and severally liable for the full amount of the UVTA Transfers to the extent such transfers were ultimately made for his benefit. Mr. Ordoñez had full dominion and control over each of the entity Defendants and was the person for whose benefit each of the transfers was made.

129.    Because San Agustin and the Ordoñez Instrumentalities, acting under the dominion and control of Mr. Ordoñez, made the UVTA Transfers with actual intent to hinder, delay or defraud Plaintiffs, as creditors, Plaintiffs are entitled pursuant to NY DCL § 276-a to recover their reasonable attorneys' fees and expenses as fixed by the Court.

130.    Plaintiffs reserve the right to amend the amount of UVTA Transfers to the extent discovery uncovers additional transfers later in time from those listed in the attached schedules.

**COUNT V**
**Avoidance and Recovery of UVTA Transfers As Constructive Fraudulent Transfers**
**(NY DCL (UVTA) §§ 274, 276, 277),**
**Heaven Investments, Spring Assets, Axia Power, OSDI,**
**Waterstone, Bliwise Int'l, Blue Stone and Mr. Ordoñez, as Initial Transferee or**
**as the Party for Whose Benefit Certain Initial Transfers Were Made**

131.    The Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

132.    Plaintiffs seek to avoid and recover fraudulent conveyances made by San Agustin in the amount of $31,272,174 made after April 4, 2020, and such claims are governed by NY DCL (UVTA) § 274. These transfers may be recovered from Heaven Investments, Spring Assets, Axia Power, OSDI, Waterstone, Bliwise Int'l and Mr. Ordoñez as initial transferees and/or the party for whose benefit those transfers were made, and from Spring Assets, Pretium, OSDI, and German

Osorio and Jackie Diaz (jointly) as subsequent transferees (Plaintiffs' subsequent transferee claims relating to the UVTA Transfers are asserted in Count VI of this Complaint).

133.    Each of the Ordoñez Instrumentalities knew, by virtue of them being under the common control and dominion of Mr. Ordoñez, and acting at his direction, that the transfers made by them were in furtherance of Mr. Ordoñez's personal interests, had no legitimate business purpose and were fraudulent as to their own creditors.

134.    Waterstone failed to produce any documents to support the Waterstone Transfer. Upon information and belief, Waterstone knew that San Agustin was funding an investment in which Mr. Ordoñez is the beneficial owner of Blue Canal, the property owner. This transaction had no connection to San Agustin's business operations and San Agustin received no benefit from the Waterstone Transfer.

135.    German Osorio, who controlled OSDI and, upon information and belief, Bliwise Int'l, acted as nominee for Mr. Ordoñez's U.S. investments due to the pendency of Plaintiff's adversary proceeding against San Agustin.

136.    As of the date of each of the UVTA Transfers, Plaintiffs or their predecessors in interests were creditors of San Agustin. At the time of each of the UVTA Transfers made by San Agustin, San Agustin was either insolvent or rendered insolvent by such transfer as evidenced by, among other things, San Agustin's failure to pay the Amended Judgment. At the time each of the UVTA Transfers were made, Plaintiffs were present creditors of San Agustin or are the assignees of TFT, which was a present creditor at the time of such transfer. Any and all claims held by TFT relating to such transfer, including claims to avoid those transfers under applicable law, were assigned to Plaintiffs.

137. San Agustin did not receive reasonably equivalent value for any of the UVTA Transfers. There are no underlying agreements with the recipients to establish a business purpose for the transfers. Mr. Ordoñez, as the authorized person exercised control over San Agustin and each of the Ordoñez Instrumentalities, directed the transfers to be made, and personally benefitted from each of the transfers.

138. As referenced in Paragraphs 88 above, using May 15, 2015 as the date the claims accrued under the "discovery rule," this action has been timely commenced to the extent any of the transfers fall outside the four-year statute of limitations provided by NY DCL (UVTA) § 278(a).

139. The UVTA Transfers are thus avoidable as constructive fraudulent transfers pursuant to NY DCL (UVTA) § 276.

140. As set forth above, the constructively fraudulent UVTA Transfers from San Agustin were made to or for the benefit of the following entities:

   i. $3,030,703 in transfers were made for the benefit of Mr. Ordoñez;

   ii. $8,525,347 was transferred to Heaven Investments;

   iii. $13,593,843 was transferred to Spring Assets;

   iv. $3,827,000 was transferred to Axia Power;

   v. $960,311 was transferred to OSDI;

   vi. $833,910 was transferred to Waterstone or for the benefit of Blue Canal; and

   vii. $501,060 was transferred to Bliwise Int'l.

141. NY DCL (UVTA) § 277 provides that: to the extent that a transfer is avoidable under NY DCL (UVTA) § 276(a), "(1) … the creditor may recover judgment for the value of the asset transferred … or the amount necessary to satisfy the creditor's claim, whichever is less." The statute also provides that the Court may enter judgment against: "(i) the first transferee of the asset

or the person for whose benefit the transfer was made; or (ii) an immediate or mediate transferee of the first transferee."

142.    Pursuant to NY DCL (UVTA) § 277(b), Plaintiffs may recover against each of the initial transferees of the UVTA Transfers for the amounts set forth in paragraph 140 above.

143.    Plaintiffs also seek judgment against Mr. Ordoñez to be held jointly and severally liable for the full amount of the UVTA Transfers because he was the person for whose benefit those transfers were made.

144.    Pursuant to NY DCL (UVTA) § 276-a to recover against any Defendant found liable to Plaintiffs for Plaintiffs' reasonable attorneys' fees and expenses as fixed by the Court.

145.    Plaintiffs reserve the right to amend the amount of UVTA Transfers to the extent discovery uncovers additional transfers later in time in addition to those summarized in paragraph listed in the attached schedules.

## COUNT VI
### Recovery of UVTA Actual and Constructive Fraudulent Transfers
### (NY DCL (UVTA) § 277),
### Spring Assets, Pretium, OSDI, and German Osorio and Jackie Diaz (jointly) as Subsequent Transferees

146.    The Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

147.    Pursuant to NY DCL (UVTA) § 277(b), to the extent any UVTA Transfers are avoidable under Count IV or Count V, Plaintiffs may recover against each of the subsequent transferees for the value of the UVTA Transfers each received unless such transferee can demonstrate that they received the transfers in good faith and for reasonably equivalent value.

148.    The avoidable UVTA Transfers received by subsequent transferees are as follows:

i.    Spring Assets received $18,929,000, as subsequent transferee, of transfers originated by San Agustin ($3,827,000), Termonorte ($10,398,000) and Chianto ($4,704,000);

    ii.    Pretium received $2,132,826, as subsequent transferee, of transfers originated by San Agustin;

    iii.    OSDI received not less than $155,000, as subsequent transferee, of transfers originated by San Agustin; and

    iv.    German Osorio and Jackie Diaz, jointly, received no less than $571,231 as subsequent transferee, of transfers originated by San Agustin and Spring Assets.

149.    Pursuant to NY DCL (UVTA) § 277(b), Plaintiffs may recover against each of the subsequent transferees for the amounts set forth in paragraph 148 above.

150.    Plaintiffs also seek judgment against Mr. Ordoñez to be held jointly and severally liable for the full amount of the UVTA Transfers because he was the person for whose benefit each of the transfers were made.

151.    Plaintiffs reserve the right to amend the amount of UVTA Transfers to the extent discovery uncovers additional subsequent transfers than those identified in the attached schedules.

## COUNT VII
### Declaratory Judgment
### As to Oscar Ordoñez

152.    The Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

153.    Upon information and belief, Mr. Ordoñez exercised complete dominion and control over Valle, San Agustin and each of the Ordoñez Instrumentalities in connection with their finances, the incurrence of debt and transfer of funds. Mr. Ordoñez was a signatory on each entity's bank account and controlled each entity through nominee shareholders and directors, all of whom have agreed with him that he, rather than they, controlled the company's operations. Further, to the extent that the Ordoñez Instrumentalities' equity was held by a trust, the purportedly independent trustees agreed with Mr. Ordoñez not to take any action without his consent and direction.

154.     As a result, Mr. Ordoñez failed to treat Valle, San Agustin, or any of the Ordoñez Instrumentalities as separate business entities and used his complete control over Valle, San Agustin and the Ordoñez Instrumentalities to commit a fraud on those companies' creditors, and in particular upon the Plaintiffs and their predecessors in interest.

155.     Upon information and belief, Valle and San Agustin collected revenue from the sale of oil and/or gas.

156.     Upon information and belief, the Ordoñez Instrumentalities had no operations and derived all of their initial funding from Valle and San Agustin, with additional funding later provided from the proceeds of the sale of Termonorte.

157.     Upon information and belief, Valle, San Agustin and the Ordoñez Instrumentalities made the UFCA Transfers and the UVTA Transfers that Plaintiffs seek to avoid and did so at the direction of and for the benefit of Mr. Ordoñez.

158.     Upon information and belief, the UFCA Transfers and UVTA Transfers between affiliates were not arm's-length transactions and the transferors received no, or less than reasonably equivalent, value.

159.     Upon information and belief, the UFCA Transfers and UVTA Transfers between affiliates were commingled with personal investment funds of Mr. Ordoñez.

160.     As a result, Plaintiffs are entitled to the following declarations: (a) Mr. Ordoñez dominated and controlled Valle, San Agustin and the Ordoñez Instrumentalities, disregarded corporate formalities, used debt and cash transfers to strip Valle, San Agustin and the Ordoñez Instrumentalities of assets in order to enrich Mr. Ordoñez, (b) Mr. Ordoñez perpetrated a fraud on the creditors of Valle, San Agustin, and the Ordoñez Instrumentalities including the Plaintiffs and their predecessors in interest, (c) Plaintiffs have demonstrated sufficient evidence of Mr. Ordoñez's

domination and intent to commit fraud necessary for the piercing of the corporate veil and (d) Mr. Ordoñez's personal funds and assets may be seized and liquidated as necessary to satisfy the Amended Judgment plus any additional damages, interest, costs and expenses awarded under Counts I through VI herein.

**COUNT VIII**
**Alter Ego Liability / Piercing the Corporate Veil Against**
**Mr. Ordoñez and the Ordoñez Instrumentalities**

161.    The Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs above as if fully set forth herein.

162.    Upon information and belief, at all times relevant to the UFCA Transfers and UVTA Transfers, San Agustin and its Ordoñez Instrumentalities were acting at the direction of and/or under the complete domination, dominion, and control of Mr. Ordoñez, as Mr. Ordoñez's alter ego and/or instrumentality, for the benefit of Mr. Ordoñez.

163.    Upon information and belief, Mr. Ordoñez used Valle, San Agustin and the Ordoñez Instrumentalities as a mere devise to further his own pecuniary interest.

164.    Upon information and belief, San Agustin and the Ordoñez Instrumentalities continue to exist as active entities under the dominion and control of Mr. Ordoñez.

165.    Upon information and belief, Mr. Ordoñez, through his complete dominion and control of San Agustin and its Ordoñez Instrumentalities, abused the corporate form of San Agustin and the Ordoñez Instrumentalities, to perpetrate a wrong against their creditors, including Plaintiffs herein and Plaintiffs' predecessors in interest.

166.    Plaintiff has been damaged and will continue to suffer damages in an amount to be determined by the Court, but not less than the amount of the Amended Judgment plus legal fees and interest, and Mr. Ordoñez should be held jointly and severally liable therefor. The Court should

find and order that Mr. Ordoñez's personal funds and assets may be seized and liquidated to satisfy

any judgment entered in this case.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against

Defendants:

1. On Count I, damages in an amount to be determined at trial but believed to be not less than the amounts due under the Amended Judgment, plus pre- and post-judgment interest including, without limitation, Plaintiffs costs, expenses and reasonable attorneys' fees relating to this action;

2. On Count II, damages in an amount to be determined at trial but believed to be not less than the amount due under the Amended Judgment, plus pre- and post-judgment interest including, without limitation, Plaintiffs costs, expenses and reasonable attorneys' fees relating to this action;

3. On Count III, damages in an amount to be determined at trial but believed to be not less than the amount due under the Amended Judgment, plus pre- and post-judgment interest;

4. On Count IV, damages in an amount to be determined at trial but believed to be not less than the amount due under the Amended Judgment, plus pre- and post-judgment interest including, without limitation, Plaintiffs costs, expenses and reasonable attorneys' fees relating to this action;

5. On Count V, damages in an amount to be determined at trial but believed to be not less than the amount due under the Amended Judgment, plus pre- and post-judgment interest including, without limitation, Plaintiffs costs, expenses and reasonable attorneys' fees relating to this action;

6. On Count VI, damages in an amount to be determined at trial but believed to be not less than the amount due under the Amended Judgment, plus pre- and post-judgment interest;

7. On Court VII, judgment declaring that: (a) Mr. Ordoñez dominated and controlled Valle, San Agustin and the Ordoñez Instrumentalities, disregarded corporate formalities, used debt and cash transfers to strip Valle, San Agustin and the Ordoñez Instrumentalities of assets in order to enrich Mr. Ordoñez, (b) Mr. Ordoñez perpetrated a fraud on the creditors of Valle, San Agustin, and the Ordoñez Instrumentalities including the Plaintiffs and their predecessors in interest, (c) Plaintiffs have demonstrated sufficient evidence of Mr. Ordoñez's domination and intent to commit fraud necessary for the piercing of the corporate veil and (d) Mr. Ordoñez's personal funds and assets may be seized and liquidated as necessary to satisfy the Amended Judgment plus any additional damages, interest, costs and expenses awarded under Counts I through VI herein;

8.    On Count VIII, damages in an amount to be determined at trial but believed to be not less than the amount due under the Amended Judgment, plus pre- and post-judgment interest including, without limitation, Plaintiffs' costs, expenses and reasonable attorneys' fees relating to this action, finding and ordering that Mr. Ordoñez's personal funds and assets may be seized and liquidated to satisfy the Amended Judgment, plus interest, costs and expenses as provided by law; and

9.    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

DATED: January 12, 2026                    Respectfully submitted,
        New York, NY
                                           PILLSBURY WINTHROP SHAW PITTMAN LLP

                                           By:/s/ John A. Pintarelli_____
                                               John A. Pintarelli
                                               Patrick E. Fitzmaurice
                                               31 West 52nd Street
                                               New York, NY 10019-6131
                                               Phone: 212.858.1000
                                               Fax: 212.858.1500
                                               john.pintarelli@pillsburylaw.com
                                               patrick.fitzmaurice@pillsburylaw.com

                                           *Attorneys for Plaintiffs*